# Staunton.

## LAMBORN & COMPANY v. BRISTOL GROCERY COMPANY.

### September 18, 1924.

1. SALES—*Deficiency in Quality—Return of Part of Goods by Buyer.*—Where the goods are deficient as to quality, the rule is that the buyer should either reject the whole, or accept under protest, and sue to recover the damages sustained by reason of the breach of the implied warranty.

2. SALES—*Deficiency in Quality—Return of Part of Goods by Buyer—Case at Bar.*—In the instant case, an action by sellers against buyer, the buyer reported to the sellers that a portion of the goods were damaged, and, at the latter's request, they were returned at their expense with the promise that sellers would replace them with goods of like quality.

   *Held:* That under these circumstances the acceptance of a portion of the goods did not bind the buyer to pay for the residue. By their conduct the sellers waived their right to demand payment for the goods returned.

3. SALES—*Promise by Seller to Replace Damaged Goods—Failure to make Replacement within Contract Time—Case at Bar.*—In the instant case a buyer reported to the sellers that a portion of the goods were damaged, and, at the latter's request, the goods were returned at their expense with the promise that they would replace them with goods of like quality. There was no evidence that the buyer agreed in terms to accept and pay for the goods which were to be shipped in place of the damaged goods; and if, as contended, the return of the damaged goods bound the buyer to accept a substitute performance of the original contract, the sellers relieved it of such obligation by failing to ship the replacement goods within the time required by the original contract.

4. SALES—*Time as Essence of the Contract.*—If the contract specifies the time when delivery is to be made, time is of the essence of the contract, and if delivery is not made within the time agreed on, the buyer is not liable.

5. SALES—*Shipping Orders—Case at Bar.*—In the instant case buyer, at the request of the seller, returned to him part of the goods, which were the subject of the sale and were damaged, and seller promised

to replace the damaged goods with goods of like quality. The seller claimed that he did not replace the goods because it was awaiting shipping instructions.

*Held:* That there was no merit in this contention, as the original contract of sale required shipment within a specified time, "seller's option of shipping to suit seller's convenience *during the period mentioned.*"

Error to a judgment of the Corporation Court of the city of Bristol, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Hitch, Denmark & Lovett, J. K. Brown, D. T. Stant* and *E. K. Bachman,* for the plaintiff in error.

*Pennington, Price, Jones & Curtin,* for the defendant in error.

West, J., delivered the opinion of the court.

This writ of error is to a judgment in favor of Bristol Grocery Company, defendant, in a suit against it by Lamborn & Company, plaintiffs, to recover $2,463.16, the difference between the contract price and the market price, on resale, of 161 bags of sugar which Lamborn & Company allege Bristol Grocery Company refused to accept pursuant to contract.

Lamborn & Company were New York brokers with a branch office in Savannah, Ga., and had been the exclusive selling agents of the Savannah Sugar Refining Corporation's output. But in the spring of 1920, they went into the sugar business as merchants, and became sellers of sugar themselves, and ceased to be brokers for the season. They made a contract with the

Savannah Sugar Refining Corporation, hereinafter called "refinery," to refine sugar for them for the season of 1920, paying the refinery a toll per hundred pounds. All shipments were made in the name of the refinery, and, for convenience, bills were sent out by the refinery and collections made by it for the plaintiffs, although the latter were the owners of the sugar and made all contracts.

The Bristol Grocery Company was engaged in the grocery business in Bristol, Virginia. By contract, dated May 7, 1920, plaintiffs sold defendants 480 barrels of sugar, at $25.50 per hundred pounds, for delivery in equal quantities, beginning the last half of July and continuing through August and September, 1920, with option to plaintiffs to ship to suit their convenience during that period. By agreement, the contract was later reduced to 345 barrels. Plaintiffs had the option to ship not more than fifty per cent of the contract in 100 pound bags and the residue in barrels.

The first and third shipments were made July 7th and September 3rd, respectively, and paid for. This suit arose over the shipment of August 19th of forty-eight barrels and 161 bags, shipped as a carload lot. The car was opened by defendant at Bristol, August 31st. The barrels were all right and were accepted, but the bag sugar had loose fertilizer on it, and had the odor and taste of fertilizer and was not marketable at that time. The sugar had been loaded in a car which had just been unloaded of fertilizer. There was a thin coating of fertilizer on the floor and more in the corners of the car.

On September 1st, defendant wrote the refinery: "This bag sugar was loaded in the end of a car which had no doubt just been unloaded of fertilizer  *  *  * and contains the odor of fertilizer as well as the taste

* * * . It will be impossible for us to use the sugar. We are holding this matter awaiting to hear from you."

On September 8th the refinery replied: "Kindly return the 161 bags by freight collect and we will forward you a like quantity to replace same."

On September 10th, defendant delivered the 161 bags to the railway company for shipment to the refinery and claims to have mailed an invoice of same to the refinery. On September 20th, the refinery wrote the defendant if shipment had been made to furnish them with the bill of lading. On September 22nd, defendant sent the bill of lading as requested. The sugar reached the refinery on September 29th, when the fertilizer taint had completely evaporated, and was resold by the refinery without any discount from the then market price.

The refinery having failed to make the shipment to replace the 161 bags, as it promised, and the market having declined nearly fifty per cent, defendant wrote the refinery on October 20th: "We will only accept this sugar now based on the present market price." The plaintiffs then for the first time appear in the controversy, and on October 21st telegraphed defendant for shipping instructions covering the 16,100 pounds, "which is balance due you on your contract with Lamborn & Company."

On October 27th, the defendant replied, enclosing a copy of their letter of October 20th to the refinery, and still refusing to accept another shipment of 161 bags, except upon the terms stated in that letter.

This action was then instituted and tried by the court without a jury.

The plaintiffs claimed the defendant should either have ordered out 161 bags of sugar under the terms of

the contract or paid plaintiffs the difference between the contract price and the market price.

The defendant relied upon the condition of the car in which the sugar was shipped and the fact that the bag sugar was not marketable when received, and claimed the right to refuse it, and denied the right of plaintiffs to replace the sugar at the contract price, without the consent of the defendant, after waiting until the price of sugar had declined nearly one half.

The trial resulted in the judgment complained of for the defendant.

The plaintiff makes three assignments of error, but the first embraces them all, as follows:

The court erred in rendering judgment against them and in not entering judgment in their favor for the amount sued for.

The proof is clear that when the car was received by defendant the bag sugar was not in a merchantable condition, and that it was negligence to ship it in a car containing fertilizer. Defendant had a right to rely upon its contract.

[1] Where the goods are deficient as to quality, the rule is that the buyer should either reject the whole, or accept under protest, and sue to recover the damages sustained by reason of the breach of the implied warranty of the quality of the goods. *Syer & Co.* v. *Lester*, 116 Va. 545, 82 S. E. 122.

[2] This rule has no application, however, where, as in the instant case, the buyer reports to the seller that a portion of the goods are damaged and at the latter's request they are returned at his expense with the promise that he will replace them with goods of like quality. Under these circumstances the acceptance of a portion of the goods did not bind the purchaser to

pay for the residue.   By their conduct, the sellers waived their right to demand payment for the sugar which was returned.

[3, 4] Plaintiffs contend that they were bound by the original contract to send a like quantity to replace the damaged sugar, and that defendant was likewise bound by this original contract to accept it.   We find no proof that defendant agreed in terms to accept and pay for the sugar which was to be shipped in place of the damaged sugar.   On the contrary, on October 20th, defendant wrote that it would not accept the shipment, except at the market price at the date of the shipment.

If, as contended, the return of the damaged sugar bound defendant to accept a substitute performance of the original contract, plaintiffs have relieved it of such obligation by failing to ship the 161 bags on or before September 30th, as required by the original contract.

"If the contract specifies the time when delivery is to be made, time is of the essence of the contract, and if delivery is not made within the time agreed on, the buyer is not liable."   35 Cyc. page 175.

[5] The plaintiffs' claim that they did not reship because they were awaiting shipping instructions is without merit.   The contract required plaintiffs to ship all the sugar in July, August and September, 1920, "seller's option of shipping to suit seller's convenience *during the period mentioned.*"

The contract did not require the buyer to give shipping instructions; certainly not as to the replacement shipment now under consideration, since plaintiffs had written defendant, "we will forward you a like quantity to replace same."

Plaintiffs having failed to comply with the terms of

the contract on their part, they will not be permitted to enforce it strictly against the defendant.

The parties have had a fair and impartial trial in the corporation court, and we find no reason to reverse its judgment.

*Affirmed.*